## VULCAN TRADING CORPORATION v. KOKOMO STEEL & WIRE CO.

(Circuit Court of Appeals, Seventh Circuit.   October 5, 1920.   Rehearing Denied December 9, 1920.)

No. 2702.

1. **Sales ☞174—Immaterial delay in furnishing installment of credit held not to excuse installment delivery.**

Under a contract for the sale of wire rods, which required the seller to deliver a third of the quantity sold in each of three stated months, and required the buyer to establish a credit for the seller on the 15th of the month for the quantity to be delivered the following month, a delay of 8 days in establishing the credit for the last month's deliveries, if it was immaterial, did not excuse the seller from making delivery for that month, where the seller was then in default in its deliveries for the two preceding months, even if the establishment of the credit on the date stated would have been a condition precedent to obligation to deliver, if the contract for that month's deliveries had been a separate contract.

2. **Sales ☞62—Contract for delivery on installments is not separate contract for each installment.**

A contract for the sale of a stated quantity of wire rods to be delivered in three equal monthly installments, which provided for the establishment of credits to secure payment for each installment before delivery, is a single contract in its entirety, not a series of three separate contracts for each installment.

3. **Sales ☞194—Delay in payment ordinarily not material breach of installment contract.**

In the case of installment contracts, though delay in delivery on the date specified is ordinarily a material breach, since it violates the fundamental purpose of the buyer in entering into the contract, delay in payment for the goods is ordinarily not material, but can be compensated by the allowance of interest.

4. **Sales ☞174—Delay in establishing credit held immaterial.**

Where a contract for the sale of wire rods required delivery in three equal monthly installments, and required the buyer to establish credits for payment of each month's deliveries on the 15th of the preceding month, a delay of 8 days in establishing the credit for the last month's delivery, which still left 8 days between the establishment of the credit and the time for delivery, and when the seller had not completed delivery of the quantity required for the first two months, so that it had unexhausted credit for those deliveries, was immaterial, and did not excuse the seller from making delivery of the quantity required for the third month.

In Error to the District Court of the United States for the District of Indiana.

Action by the Vulcan Trading Corporation against the Kokomo Steel & Wire Company to recover damages for breach of contract. Judgment for defendant after a general demurrer to the complaint was sustained, and plaintiff brings error. Reversed, with directions to overrule demurrer.

William L. Taylor, of Indianapolis, Ind., for plaintiff in error.
Conrad Wolf, of Kokomo, Ind., for defendant in error.

Before BAKER, EVANS, and PAGE, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
268 F.—58

BAKER, Circuit Judge. Vulcan Corporation, as buyer, and Kokomo Company, as seller, entered into a contract whereby the seller sold 4,500 tons of wire rods to the buyer at $58 a ton and agreed to deliver on cars at Kokomo, Ind., 1,500 tons in November, 1,500 tons in December, and 1,500 tons in January; and the buyer agreed to establish in the seller's name an irrevocable banker's credit, subject to sight drafts with bills of lading attached, the credit for the November shipments to be established on the preceding October 15th, for the December shipments on November 15th, and for the January shipments on December 15th.

In its complaint the buyer set forth the contract and averred that it had established the required credit of $87,000 on October 15th and a like credit on November 15th; that the December credit was not established until December 23d; that the delay of 8 days was occasioned by the following circumstances, namely: That the seller was a manufacturer in Indiana; that the buyer was a jobber in New York; that when making the contract the seller knew that the buyer was purchasing the wire rods for the purpose of reselling them to the trade; that prior to December 15th the seller knew that the buyer had resold the 4,500 tons deliverable by the seller under the contract; that with such knowledge the seller delivered down to December 15th only 400 tons; that, if the seller had delivered prior to that date the tonnage then due, the buyer could have used the bills of lading as bases for credit, and would have established the December credit on the 15th; that, because it did not have such bills of lading, the buyer was required to spend the 8 days in procuring other means of credit; that on January 1st the seller was in default for 2,600 tons of the promised November and December shipments; that during January the/ seller continued to make deliveries, until the 2,600 tons for November and December had been delivered, and then refused to make any part of the 1,500 tons deliveries for January, although the sum of $87,000 to pay therefor was then, and had been since December 23d, standing to the credit of the seller; and that thereby the buyer was damaged, etc. To this complaint the seller's general demurrer was sustained, and judgment for costs followed the buyer's refusal to plead further.

[1] Throughout the briefs and arguments for the seller runs the basic contention that the buyer's delay in establishing the December 15th credit for January shipments breached a condition precedent and thereby absolved the seller from ever making the shipments promised for January. If the contract had been for only the November deliveries and the October 15th credit, we will assume that on the buyer's failure to establish the credit on October 15th the seller could have successfully denied obligation to deliver. And if there had been successive separate contracts similarly covering December and January deliveries, the consequences of failure or delay in establishing prior credits would have been the same. So the seller is found to be contending for the very same right that would have accrued to it if there had been a separate contract for January deliveries. But three separate contracts were not executed. There is but one contract. It is an entirety, even though it calls for installments of deliveries and in-

stallments of credit. A contract for a single delivery and a single credit and a contract for installments of deliveries and installments of credit are alike in this respect: Performance of the buyer's promise to establish a prior credit stands as a condition precedent to the seller's obligation to deliver; it is a condition precedent, because it is the first promise to be fulfilled in order to set in motion the execution of the contract. The seller's promise is a secondary, subordinate, dependent condition; but if the buyer has fulfilled his promise, that promise has been converted into a completed act and no longer stands as any part of the executory contract, and the seller's promise thereupon acquires the primary rank in the executory contract. A single contract and an installment contract differ in this respect: In the single contract, if the buyer by fulfilling his promise to establish the single credit has promoted the seller's promise of a single delivery into the primary rank in the executory contract, there are no remaining promises on the part of the buyer to become secondary, subordinate, dependent conditions; while in the installment contract, if the buyer by fulfilling his promise respecting the first installment of credit has promoted the seller's promise of the first installment of deliveries into the primary rank in the executory contract, there remain the alternately succeeding promises of credits and deliveries. After the buyer has stricken from the executory parts of the installment contract his first promise by converting it into a completed act, may the seller ignore his own default in completing on time the first installment of deliveries—an obligation which now stands first among the executory parts of the contract—and insist that the buyer's promise of the succeeding installment of credit stands first and that performance thereof on the named day becomes a condition precedent to the seller's obligation to continue the performance of the contract beyond completing the first promised delivery?

[2] Is this buyer's delay of eight days in establishing the December 15th credit, while the seller was executing the contract without regard to its own promises of time, fatal to the maintenance of this action? Yes, if the establishment of the December 15th credit on that exact date was a condition precedent. Yes or no, dependent upon the materiality of the delay, if the condition was not a condition precedent, but merely a condition which had to be fulfilled reasonably in the circumstances in which the parties were mutually executing the contract. But in order to hold that the condition is a condition precedent it would be necessary to say that an installment contract is the same in law as separate and independent contracts which in times and amounts of credits and deliveries would correspond with the installments of the installment contract. Such is not the law. An installment contract is an entirety. The present contract was for one sale of 4,500 tons, not three contracts for three sales of 1,500 tons each. Norrington v. Wright, 115 U. S. 188;[1] Simpson v. Crippen, L. R. 8 Q. B. 14; Freeth v. Burr, L. R. 9 C. P. 208; Mersey Steel & Iron Co. v. Naylor, 9 App. Cas. 434; Cherry Valley Iron Works v. Florence Iron River Co., 64 Fed. 569, 12 C. C. A. 306; Cycle Co. v. Wheel Co., 105 Fed. 324, 44 C. C. A. 523; Construction Co. v. Guerini Stone Co.

[1] 6 Sup. Ct. 12, 29 L. Ed. 366.

241 Fed. 545, 154 C. C. A. 324; Williston on Sales, fifth line from bottom of page 821 to sixth line of page 824; 13 Corpus Juris, 568, 569.

[3, 4] So the inquiry becomes: Was the buyer's delay in establishing the December 15th credit until December 23d a material breach of a subordinate condition of the contract in the circumstances pleaded in the complaint? While in installment contracts stipulations of times of delivery are ordinarily material obligations, breaches of which go to the essence of the contract, stipulations of times of payment, in the absence of an express or necessarily implied condition that times of payment shall be of the essence, are not so vital that delay in payment would justify the seller's refusal to deliver the succeeding installments, unless the delay was of such importance as to work material injury to the seller or fairly expressed the buyer's intention no longer to be bound by his remaining executory agreements. Authorities, supra. Without an agreement to the contrary, delay in payment may ordinarily be compensated for with interest; but without an agreement to the contrary, delay of delivery of goods beyond the stipulated times violates the foundational purpose of the buyer in entering into the contract at all. And if a buyer's delay in paying for goods already delivered would not necessarily absolve the seller from his remaining executory agreements to deliver, how much less material was this buyer's delay in establishing the December credit against the promised January shipments! On October 15th the seller company had available $87,000 of the buyer's money with which to pay itself for the November shipments. On November 15th, though the seller had not shipped a pound, the buyer was required to and did put up $87,000 more, because the seller could not be known to be in default for the November shipments until the last day of the month. On December 15th, the seller having shipped only 400 tons and having paid itself $23,200 therefor, there remained in bank subject to the seller's drafts $150,800 of the buyer's money. On December 23d this was increased to $237,800, and the amount so remained with the oncoming of January. During January the seller completed the shipments due in November and December; and when the seller refused to do anything about the January shipments, $87,000 of the buyer's money was still in bank for the seller's benefit. Now the plain purpose of requiring the buyer to establish credits in advance of deliveries was to give the seller unquestionable security, not security that subsequently might have to be pursued, but security yielding cash on delivery. The delay of 8 days was not a material, if any, impairment of that purpose, because for 8 days preceding January and for a month and 8 days preceding the seller's completion of the November and December shipments the credits for the entire 4,500 tons were available to the seller. And between December 15th and December 23d the pleaded circumstances of the seller's knowledge of the buyer's purpose in entering into the contract, the seller's knowledge prior to December 15th of the buyer's resales of the 4,500 tons, and the rapidly rising market, so far from fairly expressing the buyer's intention no longer to be bound, unmistakably demonstrate the buyer's desire that the contract should be fulfilled.

Though the foregoing considerations suffice, in our judgment, to determine this writ of error, two other propositions, based on the premise that the condition respecting the December 15th credit was a condition precedent, have been extensively argued and it may not be inappropriate briefly to notice them.

One is that, though a defendant's act of prevention will excuse the plaintiff's nonperformance of a condition precedent, nothing short of an act which makes it "physically impossible" for the plaintiff to perform is a "legal prevention." Duress, undue influence, and other like oppressions, are not restricted to physical means. Why should "legal prevention" be so limited? In Lake Shore Ry. Co. v. Richards, 152 Ill. 59, 38 N. E. 773, 30 L. R. A. 33, the court, after reviewing numerous cases, denied such a limitation. See, also, United States v. Peck, 102 U. S. 64, 26 L. Ed. 46; Griffin v. American Gold Mining Co., 123 Fed. 283, 59 C. C. A. 301; Heidenheimer v. Cleveland, 11 Tex. Civ. App. 546, 32 S. W. 826.

The other is that, conceding the inability of the party who is first in default to count as plaintiff upon the defendant's following default (State v. McCauley & Tevis, 15 Cal. 430; Central Lumber Co. v. Arkansas Valley Co., 86 Kan. 131, 119 Pac. 321), if the party who is first in default is defendant, he may base a successful resistance upon the plaintiff's following default. But in Ankeny v. Richardson, 187 Fed. 550, 109 C. C. A. 316, the party who was first in default was defendant, and he was not permitted to speak of the plaintiff's act in following his example.

But to neither of these two questions do we now find it necessary to formulate a definitive answer of our own.

The judgment is reversed, with direction to overrule the demurrer to the complaint.