## ROBBINS v. UNITED STATES.
### No. 42441.

Court of Claims.
Dec. 6, 1937.

406

Allen G. Gartner, of Washington, D. C., for plaintiff.

J. H. Sheppard, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The evidence shows that in 1922 the plaintiff entered into a contract with the National Fisheries Company under the terms of which he was to receive an annual salary in cash and in addition a certain amount of capital stock, provided the net earnings of the company should amount to a certain sum for one of specified years. This condition was fulfilled before the end of the calendar year 1922, and in March, 1923, the company issued to the plaintiff 2,500 shares of its stock in accordance with the contract, which at the time was fairly worth $15 a share.

Plaintiff made an income tax return for the calendar year 1923 but did not set out as income the value of the 2,500 shares of stock so received by him, as stated above, for the reason that in making up his return he proceeded on the basis that no income would arise therefrom until the stock was converted into cash; or, in other words, plaintiff in making his return for 1923 took the position that no tax should be assessed on account of his having received the stock in that year.

During the year 1928 the plaintiff sold 200 shares of the stock received by him in 1923, and in 1929 he sold 900 shares of this stock. His income tax return for the calendar year 1928 was filed on March 15, 1929, and disclosed a net income of $20,145.-29, a tax on capital gain of $27,907.51, and

a total tax liability of $28,490.08, which was duly paid.

Plaintiff also filed his income tax return for the calendar year 1929 prepared in the same manner as for 1928. Included in the net gain reported on the sale of the stock for both years was the entire amount received for the shares issued to him under the contract and the cost or value at the date of issuance was not stated.

In March, 1931, the plaintiff filed separate claims for refund of taxes paid for the years 1928 and 1929 as stated in findings 10 and 11. These claims were based on the ground that he was entitled to use the fair market value of the stock at the time it was received as the basis for determining the net profit subject to tax for the respective years. The refund claims were rejected by the Commissioner on the ground that the plaintiff was estopped from making this claim. This constitutes the sole issue in the case.

It will be observed that plaintiff now claims that he is entitled to deduct the value of the stock when acquired from its value when sold in order to ascertain the amount of tax for the year of sale. This is equivalent to a claim that the value of the stock when acquired should have been assessed for the year in which it was received. But is was too late to do this when the refund claims were filed, and up to that time the defendant had no notice or knowledge that plaintiff would make such a claim. On the contrary it had every reason to believe from the returns which plaintiff made that he would not do so.

In view of the fact that at the time the claims for refund were filed the statute of limitations had run against assessing a tax on the receipt of the stock during 1923, we are clear the Commissioner was right in holding that the plaintiff was estopped from setting up these claims. The plaintiff cites a decision of the Board of Tax Appeals as showing the necessary elements of an estoppel, but we have extended the rule much farther than stated in the quotation from the decision of the Board and have, as we think, abundant authority for such action.

The plaintiff, it is true, made no representation of any kind to the defendant and no intent to defraud is shown. It also does not appear that the plaintiff intended to mislead the defendant, but none of these things are necessary under what we have held to be the correct doctrine.

■ The estoppel which arises in the case now before us and in similar cases is called an equitable estoppel, sometimes referred to as a quasi estoppel, the doctrine of which has been extended by the modern courts to prevent a wrong being done "wherever, in good conscience and honest dealing" a party ought not to be permitted to repudiate his previous statements, declarations, or actions. See Mahoning Investment Co. v. United States, 3 F.Supp. 622, 78 Ct.Cl. 231, 248, and the case of Rothschild v. Title Guarantee & Trust Co., 204 N.Y. 458, 97 N.E. 879, 881, 41 L.R.A.(N.S.) 740, cited therein. In the last-named case it was held that: "When a party with full knowledge, or with sufficient notice of his rights and of all the material facts, freely does what amounts to a recognition or adoption of a contract or transaction as existing, or acts in a manner inconsistent with its repudiation, and so as to affect or interfere with the relations and situation of the parties, he acquiesces in and assents to it and is equitably estopped from impeaching it, although it was originally void or voidable. Vohmann v. Michel, 185 N.Y. 420, 78 N.E. 156, 113 Am.St.Rep. 921; 2 Pomeroy's Equity Jurisprudence (3d Ed.), §§ 816–821, 965."

It is not necessary, however, that we should find or hold that an estoppel has been shown. There is a broader principle the application of which will defeat plaintiff's action. In the case of R. H. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 328, 78 L.Ed. 647, the Supreme Court had under consideration acts of a nature similar to those which appear in the case at bar and said: "Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. Imperator Realty Co. v. Tull, supra [228 N.Y. 447, 127 N.E. 263]. A suit may not be built on an omission induced by him who sues."

■ The failure to report any income arising by reason of the receipt of stock in 1923 brought about the omission by the government officials of an assessment of tax thereon. There is no presumption that the government officials knew plaintiff had received valuable stock in 1923 and the evidence fails to show that they did. Whatever the fact may be in this respect, it would not affect the responsibility of plaintiff upon whom the duty was cast to report the transaction. In the recent case of Alamo Nat. Bank of San Antonio, Ex'r, v. Commissioner, 36 B.T.A. 402, a similar issue arose and the Board said it was not necessary to determine whether the facts brought the case within the technical rules applicable to the doctrine of estoppel for a more fundamental consideration was involved. Also that: "By failing to report as income in 1921 any value on account of the franchise received by them upon the liquidation of the bottling company, the petitioners in effect declared that such franchise had no value at that time. * * * Limitations having run, petitioners can not now change their position and take advantage of their own error by claiming a value for the franchise in 1921 in computing the gain derived from its sale in 1931. Stearns Co. v. United States, 291 U. S. 54 [54 S.Ct. 325, 78 L.Ed. 647]."

A number of other authorities could be cited to sustain the rule laid down in these cases but we do not think it is necessary. The plaintiff cannot now be permitted to change the position which he took with reference to the taxes of 1923 and his petition must be dismissed. It is so ordered.